UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IXI MOBILE (R&D) LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO LTD, et al.,<br><br>    Defendants. | Case No. 15-cv-03752-HSG<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS AND ASSERTED CLAIMS**<br><br>Re: Dkt. No. 166 |
| IXI MOBILE (R&D) LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC,<br><br>    Defendant. | Case No. 15-cv-03755-HSG<br><br>Re: Dkt. No. 157 |

Pending before the Court is Plaintiffs' motion for leave to amend their infringement contentions and asserted claims in the above-captioned actions. Case No. 15-cv-3752-HSG, Dkt. No. 166 ("Mot.") [1]; Case No. 15-cv-03755-HSG, Dkt. No. 157. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons stated below, the Court **DENIES** Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs filed these patent infringement actions in 2014 against Defendants Samsung and Apple in the Southern District of New York, alleging that Defendants infringed the following

---

[1] All docket citations refer to the docket in *IXI Mobile (R&D) Ltd., et al. v. Samsung Electronics Co. Ltd., et al.*, Case No. 15-cv-03752-HSG, unless otherwise indicated.

patents owned by IXI: U.S. Patent No. 7,295,532 (the "'532 Patent"), U.S. Patent No. 7,039,033 (the "'033 Patent"); and U.S. Patent No. 7,016,648 (the "'648 Patent").[2] *See* Dkt. No. 1 ¶ 15. The patents are related to "mobile tethering" technology. *Id.* ¶ 12. The cases were transferred to this Court in August 2015. Dkt. Nos. 79, 90.

In June 2015, Defendants Apple and Samsung filed petitions for *inter partes* review ("IPR") by the Patent Trial and Appeal Board ("PTAB"), challenging the validity of each asserted claim of all three patents at issue.[3] Dkt. No. 119-1 ¶ 5. After filing the IPR petitions, Defendants moved to stay the litigation, and the Court granted the stay on November 12, 2015. Dkt. Nos. 119, 133. The PTAB instituted review of all the challenged claims except claim 10 of the '532 Patent. Dkt. No. 142. In December 2016, the PTAB found all the instituted claims unpatentable. Dkt. No. 147, Exs. 2–5. Plaintiffs appealed the PTAB's decision regarding the '033 Patent. Dkt. No. 142. On September 10, 2018, the Federal Circuit affirmed the PTAB's decision invalidating the challenged claims of the '033 Patent. Dkt. No. 147, Ex. 6. The final result of Defendants' 2015 IPRs was the invalidation of every claim asserted in this case other than claim 10 of the '532 Patent.

In March 2017, while the Federal Circuit appeal was pending, Plaintiffs sought *ex parte* reexamination of the '033 Patent with the United States Patent and Trademark Office ("PTO") and submitted a set of amended and new claims. Dkt. No. 173-6, Ex. 5. The PTO issued an *ex parte* reexamination certificate on February 1, 2018, amending claim 56 and adding claims 57–124 to the '033 Patent. *Id*. Apple filed a request for *ex parte* reexamination of certain challenged claims of the '532 Patent. *Id*. The PTO rejected all the challenged claims, including claim 10. Dkt. No. 173-3, Ex. 2. Plaintiffs then filed a supplemental response and proposed adding claims 64–98. Dkt. No. 173-4, Ex. 3. Reexamination of the proposed '532 Patent claims is still ongoing.

On February 21, 2019, the Court lifted the stay. Dkt. Nos. 162, 176.

---

[2] The parties stipulated to dismiss all claims related to a fourth patent, U.S. Patent No. 7,426,398. Dkt. No. 64.

[3] Plaintiffs' infringement contentions asserted the following claims from each patent (forty-one in total): 1, 4–7, 12, 14–15, 22–23, 25, 28, 34, 39, 40, 42, 46 of the '033 Patent (seventeen claims); 1, 4–5, 7–10, 12, 14–16, 23, 24 of the '532 Patent (thirteen claims); and 1–2, 7, 9, 14–16, 22–23, 27, 30 of the '648 Patent (eleven claims). Dkt. No. 173-2, Ex. 1.

## II. LEGAL STADNARD

The Patent Local Rules seek to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Accordingly, under Patent Local Rule 3-6, amendment to infringement contentions "may be made only by order of the Court upon a timely showing of good cause." In determining whether good cause exists, the Court considers (1) whether the moving party was diligent in moving to amend its contentions, and (2) whether the non-moving party would suffer prejudice if leave to amend were granted. *Koninklijke Philips N.V. v. Acer Inc.*, No. 18-CV-01885-HSG, 2019 WL 652868, at *1 (N.D. Cal. Feb. 15, 2019) (citation omitted). "The party seeking to amend its contentions bears the burden of establishing diligence." *Id.* (citation and quotations omitted). The moving party must establish diligence in two distinct phases: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Id.* (citation and quotations omitted). However, good cause "does not require perfect diligence." *Id.* (citation and quotations omitted). Absent undue prejudice to the non-moving party, good cause may be supported by "[r]ecent discovery of material, prior art despite earlier diligent search." Patent L.R. 3-6(b).

"In contrast to the more liberal policy for amending pleadings, 'the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction.'" *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (citation omitted). The rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro,* 467 F.3d at 1366 n.12 (citation and quotations omitted).

## III. DISCUSSION

Before the Court begins its analysis, it is important to note the posture of these cases, which were filed over five years ago, and transferred to this district over four years ago. In November 2015, the Court stayed the cases pending resolution of the IPR proceedings, primarily because the case could be substantially streamlined if the PTAB invalidated some or all of the asserted claims. *See* Dkt. No. 133 at 7. And that is exactly what happened: the IPR resulted in

3

the invalidation of all but one of the forty-one claims asserted by Plaintiffs in this litigation, meaning that the current scope of the case is down to a single claim. But Plaintiffs now seek to re-expand the scope of the case, dramatically, by asserting what could be more than a hundred new claims generated in the reexamination proceedings, including some undetermined number of claims that may result from the ongoing review of proposed claims of the '532 Patent. So it is no exaggeration to observe that if Plaintiffs are allowed to proceed as they propose, the Court's stay to permit completion of the IPR was essentially pointless, and accomplished nothing other than delaying resolution of this case by several years. Plaintiffs will not be surprised to hear that the Court did not anticipate, or intend, that result.

Defendants argue that res judicata, or claim preclusion, bars Plaintiffs' assertion of the new claims for the '033 Patent. Dkt. No. 173 ("Opp.") at 5. With respect to the proposed claims for the '532 Patent, Defendants contend that Plaintiffs cannot assert claims the PTO has not yet issued. Opp. at 11. And Defendants contend more broadly that Plaintiffs have not shown good cause to amend, given their lack of diligence and the prejudice that would result from the proposed amendments. *Id.* at 15-16.

The Court finds that at this stage, it need not decide whether claim or issue preclusion bars the new reexamination claims, because Plaintiffs have not established they were diligent in seeking amendment.[4] And even if Plaintiffs did establish diligence, Defendants would suffer undue prejudice if Plaintiffs are allowed to radically expand this long-running litigation at this stage.

---

[4] Without deciding the preclusion issue, the Court notes that Defendants' claim that "[t]he Federal Circuit's analysis in *Senju Pharm.*—where it found the patentee was barred from seeking a 'do-over' or 'obtaining a second bite at the apple' by asserting new reexamination claims after the original claims were held to be invalid—applies directly to this case" is not self-evidently correct. Opp. at 10 (citing *Senju Pharm. Co. v. Apotex*, 746 F.3d 1344, 1353 (Fed. Cir. 2014)). As Plaintiffs note, *Senju Pharm.* involved a district court judgment of invalidity rather than a PTAB decision. *See* 746 F.3d at 1347. While, for the reasons discussed below, there would appear to be obvious inefficiency in allowing Plaintiffs to resurrect claims invalidated in IPR by turning to *ex parte* reexamination, this appears to be an unresolved issue not squarely addressed by *Senju Pharm.* In any event, the Court need not resolve this question to decide the pending motion.

**A. Diligence**

The Court first determines whether Plaintiffs have established diligence in (1) discovering the basis for amendment and (2) seeking leave to amend their invalidity contentions once the basis for amendment was discovered. *See Koninklijke*, 2019 WL 652868, at *1.

That new claims have been added during reexamination proceedings does not automatically entitle Plaintiffs to amend their infringement contentions and assert what could be more than a hundred new claims, approximately thirty of which have not yet even been issued by the PTO. Nor does it establish that Plaintiffs were diligent. As Defendants note, Plaintiffs have not identified any of the new contentions or accused products they seek to add. Opp. at 13. Plaintiffs' failure to proffer any of the proposed changes means that the Court cannot ascertain how the new contentions differ from the initial contentions or when any newly-accused products entered the market. *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. C 09-00355 WHA, 2011 WL 5574807, at *2 (N.D. Cal. Nov. 16, 2011) ("[I]t is impossible to evaluate how the new contentions differ from the initial contentions, what evidence supports the new contentions, when that evidence was discovered, and whether the changes would prejudice [defendant]"). Plaintiffs cannot amend their contentions simply because new claims were added during *ex parte* reexaminations, and Plaintiffs' cited authorities do not stand for that proposition. The court in *Acer* found it significant that the proposed amendments would add newly-accused products which did not enter the market until after the initial contentions. *See Acer, Inc. v. Tech. Properties Ltd.*, No. 5:08-CV-00877 JF/HRL, 2011 WL 1838768, at *4 (N.D. Cal. May 13, 2011). But unlike the moving party in *Acer*, Plaintiffs make no showing that they even investigated potentially infringing products to determine whether they infringe the new claims. *See id.* at *3 ("With respect to the '749 Patent, TPL offered to assert claims conditionally based on the [reexamination certificate], and it completed its investigation of infringing products and served its proposed amendment contentions approximately one month after the [reexamination certificate] issued.").

Plaintiffs blame Defendants for their failure to present proposed infringement contentions because Defendants purportedly agreed to have them served after the Court's ruling on the instant motion. Dkt. No. 174 ("Reply") at 7. But that does not relieve Plaintiffs of their burden to

5

establish diligence so as to satisfy the Court that amendment is warranted. *See O2 Micro*, 467 F.3d at 1366–67. The Court thus concludes that Plaintiffs have not carried their burden of showing diligence.

### B. Undue Prejudice

Even if the Court were to conclude that Plaintiffs had established diligence, Defendants would be unduly prejudiced by the addition of what could be over one hundred brand-new claims to a case in which only one asserted claim remains. Granting the requested leave could nearly triple the number of claims Plaintiffs initially asserted. Since 2014, Defendants have been preparing their defense based on the forty-one claims asserted by Plaintiffs. IPR proceedings then decisively and drastically narrowed the scope of this action. Allowing Plaintiffs to essentially start from scratch five years later would subvert the entire purpose of staying the case to let the IPR play out. The Court finds that result illogical.

Plaintiffs argue that Defendants would not be unduly prejudiced because the new claims "relate to the same technology [and] asserted patents," and are not "broader in scope than the original claims." *See* Mot. at 7. The Court disagrees. That the new claims are not broader in scope does not change the fact that Defendants will have to devote extensive time and resources to litigate what could be over a hundred new claims. Judicial economy counsels against effectively starting this case over with scores of new claims, when the case was successfully and substantially narrowed through years of PTAB proceedings (after being stayed for precisely that purpose).

Accordingly, the Court finds that Defendants would suffer undue prejudice were the Court to grant leave to amend. The Court has no doubt that granting Plaintiffs' motion would dramatically expand the resources the parties (and the Court) must devote to resolving this long-pending case. The parties and the public have an interest in the timely resolution of what is now a single-claim action, and introducing one hundred or more new claims will significantly prolong this litigation. Permitting Plaintiffs to expand their claims at this juncture would amount to a dramatic remaking of this case, and would allow Plaintiffs to take advantage of the "shifting sands approach" that the Patent Local Rules were designed to deter. *See Verinata*, 236 F. Supp. 3d at

1113.  If Plaintiffs want to enforce their newly-minted claims, they can try to do so in a new case.[5]

## IV. CONCLUSION

Accordingly, the Court **DENIES** Plaintiffs' motion for leave to amend infringement contentions and asserted claims.  The Court further **SETS** a case management conference for October 22, 2019 at 2:00 p.m., and **DIRECTS** the parties to file on or before October 15, 2019 a joint case management statement including a proposed schedule for the expeditious resolution of what remains of this case.

**IT IS SO ORDERED.**

Dated:

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] The Court also is not persuaded by Plaintiffs' assertion that this case is an "explicit example in Patent Local Rule 3-6 of circumstances that may support good cause." *See* Mot. at 4.  Based on the record presented, this is not a case where Plaintiffs moved to amend infringement contentions because of a "recent discovery of material, prior art despite earlier diligent search," or because Defendants released new products.  *See* Patent L.R. 3-6.  Instead, as described above, now that Plaintiffs have had nearly all of their asserted claims invalidated in the IPR proceedings, they seek to resurrect their case by substituting the claims obtained through reexamination.

7